**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:06CV104-W**

| | |
|---|---|
| DEAN A. VAUGHAN, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CELANESE AMERICAS )<br>CORPORATION, et al., )<br>)<br>Defendants. )<br>) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Plaintiffs' Motion to Compel Production of Documents" (document #17) filed November 2, 2006. The Defendants filed their ". . . Memorandum in Opposition . . ." (document #19) November 16, 2006. On November 26, 2006, the Plaintiffs filed their ". . . Reply . . ." (document #20).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the "Plaintiffs' Motion to Compel Production of Documents," as discussed below.

**I. FACTUAL AND PROCEDURAL HISTORY**

This is an action alleging failure to comply with the terms of an employee welfare benefits plan governed by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u> The Plaintiffs were all employees of the Defendant Celanese Advanced Materials, Inc.

("CAMI") and participated in The Celanese Americas Corporation Separation Pay Plan (the "Plan"). In 2005, the Defendants sold the CAMI PBI polymer line of business (with which the Plaintiffs were employed) to Intertech,[1] and the Plaintiffs were able to continue their employment with Intertech at a comparable salary. However, the parties appear to agree that the benefits offered by Intertech were not comparable to those which the Plaintiffs enjoyed as CAMI employees. The terms of the Plan entitle the Plaintiffs "to receive separation pay upon the sale of CAMI provided that the successor employer did not offer continued employment 'at a comparable level of compensation.'" Thus, this lawsuit turns on whether "compensation" encompasses salary and benefits, or only salary.[2]

The Plaintiffs served their "First Requests for Production of Documents" on the Defendants on July 19, 2006. The Defendants served their initial responses on September 6, 2006, however, they failed to include a privilege log for the documents for which they were asserting the attorney-client privilege. After the Plaintiffs' counsel brought this to defense counsel's attention on September 7, 2006, the Defendants' served the Plaintiffs' with a privilege log on September 27, 2006. Following this production, on October 3, 2006, the Plaintiffs' counsel communicated to defense counsel that the information provided in the privilege log was insufficient to support the privilege. Defense counsel responded on October 6, 2006, disagreeing that the original privilege log was insufficient, but nonetheless revising the descriptions in the privilege log "to provide greater detail of the legal issues being discussed in the confidential communications with counsel." On October 12, 2006, the Defendants submitted supplemental responses to the Plaintiffs' discovery

---

[1] The Defendants also sold CAMI's Vectran fiber line of business to Kuraray.

[2] The Plaintiffs also allege that the Defendants did actually make such severance payments to similarly situated employees in the sale of the Vectran line. The Defendants argue that this was actually a signing bonus paid by the new employer.

2

requests, along with the requisite privilege log.

These two privilege logs (one of which was revised once at the Plaintiffs' request) did not satisfy the Plaintiffs that the listed documents qualify for the attorney-client privilege, causing them to file the subject Motion on November 2, 2006. As noted above, the Plaintiffs' Motion has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION

### A. Attorney-Client Privilege

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same). However, regarding cases such as this, where attorney-client

3

privilege is raised in objection to a discovery request, the Fourth Circuit has stated that "[w]e review the district court's decision that certain documents are subject to privilege de novo, since it involves a mixed question of law and fact." Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir.), cert. denied, 120 S. Ct. 215 (1999). Accord In re Grand Jury Proceedings, 33 F.3d 342, 353 (4th Cir. 1994).

The attorney-client privilege is intended to encourage those who find themselves in actual or potential legal disputes to be candid with lawyers who advise them, and is one of the oldest recognized privileges for confidential communications. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); and Hunt v. Blackburn, 128 U.S. 464, 470 (1888). The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Upjohn, 449 U.S. at 389. Accord Swidler & Berlin v. U.S., 524 U.S. 399, 404 (1998).

When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. See Trammel v. United States, 445 U.S. 40, 50 (1980); In re Grand Jury Subpoena, 204 F.3d 516, 519-20 (4th Cir. 2000); and Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). This protection applies to communications between a corporate party and its in-house counsel, as well as to communications with a privately-retained attorney. See Upjohn, 449 U.S. at 389-90.

It is well established that the attorney-client privilege extends not only to documents authored by an attorney but also to information and queries submitted to him by his client. Upjohn, 449 U.S. at 390 (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"); and In re Allen, 106 F.3d 582, 601 (4th Cir. 1997)

4

(applying Upjohn).

When a party withholds information based upon the attorney-client privilege, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5)(A).[3] Further, the "standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust, 230 F.R.D. 398, 406 n.14 (D. Md. 2005). See also In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 223-24 (S.D.N.Y. 2001) (finding privilege log adequate where it contained the date, type of document, author, addressees, a short description of each document, and the privilege or immunity asserted with respect to each); and Pham v. Hartford Fire Ins. Co., 193 F.R.D. 659, 662 (D. Colo. 2000) (finding assertion of attorney-client privilege inadequate where the party did not identify the lawyers involved in the conversation, the people present during the conversation, or a "description of the nature of the communication sufficient to enable plaintiffs to assess the applicability of the claimed privilege").

Applying these legal principles to the documents listed in the Defendants' updated privilege

---

[3]Interestingly,

> [t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

Fed. R. Civ. P. 26(b)(5)(A) advisory committee's note.

5

log, the undersigned finds the contents of the Defendants' privilege log to be adequate. The privilege log is actually quite detailed – providing the document request numbers to which the document would be responsive, the corresponding bates number (many of the documents were actually produced in redacted form), the date, the authors and recipients (including "cc" recipients), a description of the document, and the privilege asserted. The Plaintiffs' main contention with the privilege log is that the document descriptions are not detailed enough. However, it would be difficult for the Defendants to provide much more detail than has already been given without revealing the privileged information itself. The following are a few examples of the Defendants' document descriptions:

- Email string containing confidential communications with outside counsel and in-house counsel regarding employee benefits and labor issues in VECTRAN and PBI transactions (REDACTED)

- Email string containing confidential communications with outside counsel and in-house counsel regarding Kuraray's proposal regarding treatment of benefits in Vectran transaction (REDACTED)

- Email string containing confidential communications with in-house counsel regarding analysis of pension issues in PBI transaction

- Email string containing confidential communications with in-house counsel regarding analysis of severance issues in PBI transaction (REDACTED).

These descriptions are sufficient. Accordingly, the Plaintiffs' Motion is <u>denied</u> on the grounds that the privilege log is inadequate.

### B. ERISA's Fiduciary Exception

However, the Plaintiffs make the additional argument that many of these documents should be produced even if they are protected by the attorney-client privilege. Specifically, the Plaintiffs

argue that "documents which relate to the administration of the plan, and particularly to beneficiaries' entitlement to benefits under the plan, cannot be withheld from the beneficiaries on the grounds of the attorney-client privilege."

After reviewing the many cases which have agreed with the Plaintiffs' proposition, the undersigned concludes that in this unique ERISA context, the Defendants may not claim attorney-client privilege as to documents which relate to plan administration. See, e.g., In re Long Island Lighting Co., 129 F.3d 268, 272 (2d Cir. 1997) ("an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration"); Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992) ("When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator"); and Washington-Baltimore Newspaper Guild v. Washington Star Co., 543 F. Supp. 906, 909 (D.D.C. 1982) (same).

In this unique context, the "employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries." Long Island, 129 F.3d at 271. It is this distinction that the Defendants use to avoid disclosure of the documents at issue here, documents which would otherwise be protected by the attorney-client privilege. The Defendants argue that these documents actually contain "communications by company employees with counsel . . . in connection with non-fiduciary business decisions regarding how to structure two corporate divestiture transactions, and [do] not arise from obligations imposed under the Plan." For this proposition, the Defendants cite Sutton v. Weirton Steel Div., 567 F. Supp. 1184, 1201 (N.D.

W. Va. 1983), which found

> that when a corporate employer negotiates the terms of sale of a division, whose employees are participants in a pension plan, the negotiations that affect the terms and conditions of future pension benefits (at least those that are not protected by ERISA's vesting and non-forfeitability provisions), do not implicate fiduciary duties as to the pension fund.

While this may be true, it is not applicable here. The decision not to pay severance benefits at the time of the sale to Intertech was not a change to future benefits, but rather it was a decision that the Plaintiffs were not entitled to a claim for benefits which would have otherwise been due at that time. The fact that this claim was denied at the same time a division of the Defendants' business was being sold does not change the nature of the claim denial. Further, because the benefit was severance pay which would only come about if the division was sold – to hold that a decision on benefits made during a business sale did not implicate the Defendants' fiduciary duty would mean that the Defendants were never acting as a fiduciary in relation to this Plan – because entitlement to the benefit requires that the division be sold.

Accordingly, the Defendants shall provide all responsive documents which relate to the administration of the Plan, regardless of previously claimed attorney-client privilege. In other words, the Defendants shall produce those documents which discussed the decision to deny the Plaintiffs' claims for severance pay under the Plan – up to the date that the Defendants did in fact deny the claims. Further, the Defendants shall also provide all responsive documents, regardless of attorney-client privilege previously claimed, relating to the decision to deny or grant the severance pay benefit to the similarly situated employees in the sale of its Vectran line of business. The Defendants shall review these documents to determine which are relevant to the decision to grant or deny the severance pay benefit to the Plaintiffs and the former Vectran employees, and produce such

responsive documents within thirty (30) days of this Order.[4]

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Plaintiffs' Motion to Compel Production of Documents" (document #17) is **GRANTED**. The Defendants shall provide responsive documents within thirty (30) days of this Order.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO ORDERED.**

Signed: December 11, 2006

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge

---

[4] The undersigned assumes that not all of the privilege log documents relate to Plan administration, and further, that the Defendants will make this determination in good faith – erring, if at all, in favor of production.